UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE DUNN, Individually, and as
Next Friend of J.K.C., a minor.

    Plaintiff,

v.

SCHOOL DISTRICT OF THE CITY OF
DETROIT, ASKIA ALLISON,
NATHANIEL COLEMAN, KELLY
TAYLOR, and DEREK HARRIS.

    Defendants.
_____/

Case No. 07-11950

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on September 16, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

This action arises from an incident on February 8, 2007, at Lessenger Middle School during which plaintiff's ward, J.K.C., was arrested and charged with assault and battery. Those charges were later dismissed. Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), filed on June 14, 2008. The motion has been fully briefed and the Court held a motion hearing on September 11, 2008. For the reasons set forth below, the Court grants in part and denies in part defendants' motion.

**I. Standard of Review**

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

**II. Factual and Procedural Background**

2

Plaintiff and defendants present opposing versions of the events that took place at Lessenger Middle School on February 8, 2007. Because this motion for summary judgment is brought by defendants, the Court will primarily rely on the deposition testimony of plaintiff's ward, J.K.C., in reconstructing the incident. Although both parties have expressed some concern regarding J.K.C.'s alleged mental or learning disability,[1] in this Court's opinion, J.K.C. responded appropriately to questions and provided an intelligible account of the events at issue during his deposition.

Regardless of the initial reason for the dispatch of officers to Lessenger Middle School on February 8, 2007, the parties agree that a food fight broke out during the eighth grade lunch period while the officers were present. The parties also agree that the ensuing commotion led to an altercation between the officers and one of J.K.C.'s peers, D.B. According to his deposition testimony, J.K.C. purchased a bag of chips in the school's lunchroom and entered the cafeteria around the time that the food fight began. J.K.C. was still standing when he noticed the officers wrestling with D.B. near his assigned lunch table. J.K.C. testified that he proceeded to the table beyond the one assigned to him to avoid the on-going fight with D.B. (J.K.C. Dep. 49, 63-64, July 10, 2008.)

As he was about to sit, J.K.C. claims that a short, white officer grabbed him by the arm, then picked him up by the torso, and "slammed" him on his back on a table. (*Id.* 63-64.) In response, defendants assert that all of the individually named officers are African-American. (Defs.' Reply Brief, Ex. A, ¶ 3.) Nonetheless, Defendant Officer Coleman conceded that he

---

[1] Defense counsel contended at the hearing on September 11, 2008 that because of this alleged mental or learning disability this Court should totally disregard the testimony of J.K.C.

grabbed J.K.C. and placed on him on a table. (Defs. Mot., Ex. C, ¶ 7.) Viewing the evidence in the light most favorable to plaintiff, the Court will assume for purposes of this motion that J.K.C. intended to refer to Coleman.

Next, J.K.C. alleges that the same officer pulled him off the table and "socked" him in the face. J.K.C. then fell to the floor where he described being "stomped" by at least two officers. J.K.C. testified that he was kicked in the head and back about ten times and then handcuffed. He sat handcuffed on the cafeteria floor for a few minutes, was moved to the school's counseling center, and ultimately spent the night in custody. J.K.C. suffered facial bruising as a result of the incident but testified that he never went to a hospital, saw a doctor, or attended counseling. (J.K.C. Dep. 69-90.)[2]

Meanwhile, defendants allege that J.K.C. provoked the incident by approaching and grabbing or pushing Defendant Officer Taylor as she attempted to detain D.B. Coleman asserts that it was this conduct that prompted him to grab J.K.C. and place him on the table. Coleman claims to have left J.K.C. on the table under the supervision of Defendant Officer Allison. Allison, in turn, states that J.K.C. proceeded to kick him from the table. Allison then removed J.K.C. from the table and placed him face first on the ground for the purposes of handcuffing him. Allison momentarily disengaged J.K.C., however, to get his handcuffs from under his vest and states that J.K.C. proceeded to grab at a weapon located in his thigh

---

[2] Three days prior to the motion hearing on September 8, 2008, plaintiff's counsel submitted an affidavit from a school employee who witnessed the events at the Lessenger cafeteria on February 8, 2007. In general, the affidavit supports J.K.C.'s description of the events. Because the submission was untimely, however, the Court will not consider the affidavit. Nonetheless, the Court notes that, had it been considered, the affidavit would not change the disposition of this motion.

4

holster. This caused Allison to reflexively kick at J.K.C. to free himself and Allison concedes that he inadvertently kicked J.K.C.'s head in the process. J.K.C. was then cuffed and processed as described above. (Defs. Mot. at 2-3.)

Based on the officers' version of events, assault and battery charges were brought against J.K.C. and a trial was scheduled. An Assistant Wayne County Prosecutor, however, subsequently moved to dismiss the case. Plaintiff thereafter initiated this lawsuit on May 4, 2007.

**III. Analysis**

Plaintiff brings numerous claims against the various defendants that can generally be divided into four groups: (1) federal civil rights claims, (2) state law claims, (3) a federal civil conspiracy claim, and (4) claims of municipal liability. Each category of claims will be analyzed in turn.

**A. Federal Civil Rights Claims**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). The second requirement is not in dispute in this case. "Nevertheless, government officials performing discretionary functions are shielded from liability through 'qualified immunity' if they violate an individual's constitutional rights, but the violated right was not 'clearly established' at the time of the official's actions." *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007). The Court analyzes claims of qualified immunity according to a three-part test:

5

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). The question of qualified immunity must be submitted to a jury, however, if "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989).

In this case, plaintiff alleges numerous violations of J.K.C.'s constitutional rights by the defendant officers: unlawful seizure, use of excessive force, unlawful confinement, and malicious prosecution. The disposition of each of these claims depends largely on which version of events is believed and the related conclusion regarding whether the officers had probable cause to arrest J.K.C. If the officers had probable cause to arrest J.K.C. for assault and battery against Officer Taylor or Officer Allison, they would be entitled to qualified immunity on the claims of unlawful seizure, unlawful confinement, and malicious prosecution. *See Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002). Additionally, the reasonableness of the use of force against J.K.C. depends on whether J.K.C. assaulted and battered the officers and subsequently resisted arrest. *See Graham v. O'Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867-68 (1989) (holding that excessive force claims must be analyzed according to an objective reasonableness standard).

In their motion for summary judgment, defendants assert that plaintiff is estopped from

arguing a lack of probable cause because a Michigan family court found probable cause for the assault and battery charges against J.K.C. at a preliminary hearing. Defendants attached to their motion a copy of the Michigan family court order, which states, "The juvenile is being detained, is represented by an attorney, and waived the probable cause determination."[3] Although "[a] state court's finding in a prior criminal proceeding may estop an individual from relitigating the same issue in a subsequent civil action," *Hinchman*, 312 F.3d at 202, a state court finding of probable cause will only estop further litigation on the issue where the plaintiff had the opportunity to contest the finding and actually did so. *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), overruled on other grounds by *Frantz v. Vill. of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001); *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001); *see also Diamond v. Howd*, 288 F.3d 932, 936-37 (finding that waiver of a probable cause hearing does not bar litigation of the issue in a § 1983 lawsuit).[4] Because

---

[3] Defendants do not contest the fact that the preliminary exam was waived. Nonetheless, in his brief and at oral argument, defense counsel relied heavily on this Court's opinion in *Ezell v. Malczewski*. (Def.'s Mot., Ex. F.) In that case, however, a preliminary examination was held and this Court described the proceeding in some detail. Furthermore, this Court set forth the applicable law:

> Applying these principles, the Sixth Circuit has held that "where a state affords an opportunity for an accused to contest probable cause at a preliminary examination hearing *and the accused does so*, a finding of probable cause . . . should foreclose relitigation of that finding in the subsequent Section 1983 action."

*Id.* (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987)) (emphasis added). Based on the facts and the cited law, the Court is at a loss to understand why defense counsel believes *Ezell* supports defendants' position. In this Court's opinion, a waiver of the preliminary exam does not bar a plaintiff (defendant in the criminal case) from challenging the issue of probable cause.

[4] Even if a probable cause determination had been made at a preliminary exam, "[A] finding of probable cause in a prior criminal proceeding does not bar a plaintiff in a subsequent

7

J.K.C. did not actually contest a finding of probable cause, there is no prior determination to bind this Court. Therefore, the question of whether or not there was probable cause depends upon the version of facts accepted by a jury and a genuine issue of material fact remains.

Nonetheless, not all of plaintiff's § 1983 claims can survive summary judgment. Viewing the evidence in the light most favorable to plaintiff, plaintiff has failed to submit facts admissible in evidence capable of supporting the claims made against Defendant Officers Harris and Taylor. Although J.K.C. alleged that at least two officers participated in "stomping" him and plaintiff's complaint names Harris as the first to make physical contact with J.K.C., J.K.C. was unable to identify any of the named defendants as the assailing officers. And while Coleman and Allison admit to being in physical contact with J.K.C., Harris and Taylor assert that they were preoccupied by their interactions with D.B. and did not have involvement in or witness the arrest of J.K.C. In response, plaintiff presents no evidence beyond the pleadings to support the claims against them.[5] Therefore, Harris and Taylor are entitled to summary judgment on plaintiff's § 1983 claims.

**B. State Claims**

Plaintiff's state law claims are subject to a similar analysis and present the same issue

---

civil action from maintaining a claim . . . based on a police officer's supplying false information to establish probable cause." *Hinchman*, 312 F.3d 202-03 (citing *Darrah*, 255 F.3d at 311). The overall import of J.K.C.'s deposition testimony and plaintiff's claims of malicious prosecution and civil conspiracy is that defendants fabricated their version of events to justify their conduct on February 8, 2007.

[5]At the hearing on September 11, 2008, plaintiff's counsel indicated that the claims of liability against Harris and Taylor are based on their being "complainants." There is no evidence in the record to support this claim.

of fact as the § 1983 claims. Plaintiff's state law claims include unlawful arrest, assault and battery, false imprisonment, malicious prosecution, intentional infliction of emotional distress, and gross negligence. To avoid summary judgment, plaintiff "must allege facts justifying application of an exception to governmental immunity . . . ." *Tryc v. Michigan Veterans' Facility*, 451 Mich. 129, 134, 545 N.W.2d 642, 645 (1996). Michigan law provides tort immunity for governmental agencies and their employees when engaged in the exercise or discharge of a governmental function. Mich. Comp. Laws § 691.1407. There is no dispute in this case that the defendants are governmental agencies or their employees and that the events forming the basis for plaintiffs claims occurred during the exercise or discharge of a governmental function, namely operating and maintaining a public school and providing for the safety of the school's occupants. *See Lee v. School. Dist. of City of Highland Park*, 118 Mich. App. 305, 308, 324 N.W.2d 632, 633 (1982); Mich. Comp. Laws § 380.11a(3)(b). However, a governmental employee only receives tort immunity if he acts, or reasonably believes that he is acting, within the scope of his authority and his conduct does not amount to gross negligence that is the proximate cause of the injury or damage. Mich. Comp. Laws § 691.1407(2). Gross negligence "means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(7)(a). Furthermore, government employees are not shielded under the statute from liability for their intentional torts. *Id.* § 691.1407(3); *Hullett v. Smiedendorf*, 52 F. Supp. 2d 817, 828-29 (1999) (quoting *Sudul v. City of Hamtramck*, 221 Mich. App. 455, 458, 562 N.W.2d 478, 479 (1997)).

As with plaintiff's § 1983 claims, the disposition of plaintiff's state law claims depends

9

on the version of facts accepted by the fact-finder. Whether defendants committed intentional torts depends on whether their actions were justified by probable cause and were reasonable in response to the situation. *See Brewer v. Perrin*, 132 Mich. App. 520, 528, 349 N.W.2d 198, 202 (1984) ("Governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified. Conversely, if the actions are not justified, they are not protected by governmental immunity."). For the reasons stated above, those issues must be decided by a jury. Also for the reasons stated above, however, no version of the facts supports plaintiff's state law claims against Officers Harris and Taylor and they are entitled to judgment as a matter of law.

Furthermore, all defendants are entitled to summary judgment on plaintiff's claim of gross negligence. As noted in defendants' motion, Michigan "has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v. Burmeister*, 262 Mich. App. 467, 483, 687 N.W.2d 132, 143 (2004) (listing cases). Because plaintiff's gross negligence claim rests entirely on the allegations made in support of the various intentional torts, defendants are entitled to summary judgment on plaintiff's gross negligence claim.

## C. Federal Civil Conspiracy

Plaintiff next alleges that the individually named defendants participated in a civil conspiracy to deprive J.K.C. of his civil rights. "A civil conspiracy is 'an agreement between two or more persons to injure another by unlawful action.'" *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (quoting *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000)). Plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general

conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). "Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat*, 370 F.3d at 599 (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Defendants argue that they are entitled to summary judgment on the conspiracy claim because of a lack of specificity. Plaintiff's pleadings and J.K.C.'s deposition testimony, however, go beyond generalized allegations of a conspiracy to identify a specific intent to use excessive force against J.K.C. and to fabricate a cover-up story in support of a criminal complaint against J.K.C. Plaintiff must prove an actual violation under 42 U.S.C. § 1983, however, to succeed on her civil conspiracy claim. *See Scott v. Stone*, 254 Fed. Appx. 469, 474-75 (6th Cir. 2007) (citing *Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003); *Vaden v. Village of Maywood, Ill.*, 809 F.2d 361, 366 (7th Cir. 1987)). Therefore, the genuine issue of material fact discussed above in regard to plaintiff's § 1983 claims precludes summary judgment on plaintiff's civil conspiracy claim.

Nonetheless, Defendants Harris and Taylor are entitled to summary judgment on this claim as well. Plaintiff's argument that Harris and Taylor participated in the conspiracy by showing up in court to testify at J.K.C.'s scheduled assault and battery trial must fail for three reasons. First, it remains unclear how Harris and Taylor could have furthered the alleged conspiracy because both officers deny personal knowledge of the events involving J.K.C. Second, the "overt act" of attending J.K.C.'s scheduled trial date did not cause injury to the complainant because the charges against J.K.C. were dismissed before the trial began. Third,

even if Harris or Taylor had taken the stand and furthered the alleged conspiracy, "[a]bsolute witness immunity bars a claim that is based on a defendant testifying in a prior judicial proceeding." *Hinchman*, 312 F.3d at 205 (citing *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999)). Therefore Harris and Taylor are entitled to summary judgment on all claims brought against them.[6]

**D. Municipal Liability**

Finally, plaintiff asserts claims of municipal liability based on alleged Detroit Public School ("DPS") policies and practices of failing to adequately train and supervise its police officers; tolerating or excusing their use of excessive force; and permitting them to possess, display, use, or threaten to use an ASP or other lethal impact weapons.[7] DPS argues that it is entitled to summary judgment on these claims because, among other reasons, plaintiff failed to present any evidence that DPS adopted any policy or established any custom tolerating violations of students' rights by its officers. Because plaintiff failed to respond to this issue, she has abandoned this claim. Therefore, DPS is entitled to summary judgment. Fed. Rules Civ. Pro. 56(e)(2).

**IV. Conclusion**

For the reasons stated above, Defendants Taylor, Harris, and DPS are entitled to summary judgment on all claims against them. Additionally, Defendants Coleman and

---

[6]*See also* note 5, *supra*, regarding the alleged involvement of Harris and Taylor as "complainants."

[7]An ASP is a telescoping metal baton. (Compl. ¶ 23.) There is no indication, however, that there was an ASP involved in the incident with J.K.C. During his deposition, the only equipment J.K.C. identified in the officers' possession was handcuffs. (J.K.C. Dep. at 51.) There are no allegations that J.K.C. was threatened or injured with an ASP or any other object.

12

Allison are entitled to summary judgment on plaintiff's claim of gross negligence under state law. However, an issue of fact remains in regard to plaintiff's 42 U.S.C. § 1983 claims and plaintiff's intentional tort claims made under state law against Defendants Coleman and Allison.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** as to all claims against Defendants Kelly Taylor, Derek Harris, and the School District of the City of Detroit.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **GRANTED** as to plaintiff's claim of gross negligence.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED** as to plaintiff's 42 U.S.C. § 1983 and intentional tort claims against Defendants Nathaniel Coleman and Askia Allison.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Richard L. Steinberg, Esq.
Kenneth L. Lewis, Esq.
Jason H. Harrison, Esq.
Nikki R. Wright, Esq.